IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEON ANDERSON<br>1715 Dennis Ct,<br>Forestville, MD 20747-2587 | :<br><br>: | |
| Mr. Anderson, | : | |
| v. | : | Civil Action No. 1:05CV01898 (ESH/JMF) |
| BLACKHAWK, Inc.<br>6210 Auth Road, Suite 402,<br>Suitland, MD 20746 | :<br><br>: | December 18, 2006 |
| Defendant. | : | |

## THE PLAINTIFF'S TRIAL MEMORANDUM

**INTRODUCTION**

   The plaintiff, Leon Anderson, (hereafter Mr. Anderson) has brought this case under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, et.seq. against his former employer, the defendant, Blackhawk, Inc., (hereafter Blackhawk or the defendant).   The underlying purpose for passing the FMLA was to allow employees to take time off from their jobs for medical reasons without fear that they would lose their jobs when they returned.

   The evidence in this case will show conclusively that the defendant interfered with and denied Mr. Anderson these basic FMLA rights by refusing to return him to work in December 2003 after he took an authorized medical leave. Moreover, the defendant will not be able to prove that it acted in good faith in violating these FMLA rights and that it had reasonable grounds for its actions.

Because there will be no factual disputes material to the legal principles that apply in this case, Mr. Anderson expects to move for a judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure at some time before this case is submitted to the jury. For the reasons set forth below, the Court should grant such a motion.

**FACTS**

Mr. Anderson expects that the following facts will be proved at trial. Prior to taking medical leave, Mr. Anderson worked as a security officer for Blackhawk for 4 years. (Anderson Testimony). He performed his duties well and received salary increases. On September 18, 2003, Mr. Anderson was driving to Alexandria, on the way to his second security job with Myers Security, when his car was struck by a tractor trailer. (Anderson Testimony). Mr. Anderson was diagnosed with a concussion and was disabled for about two and one-half months. (Anderson Testimony).

Mr. Anderson kept the defendant informed about the progress of his healing and when he could return to work. (Anderson Testimony). The day after the accident, he called his supervisor, Anthony Summers, and informed Summers about the accident. (Anderson Testimony). Mr. Anderson also told Summers that, because of the injuries suffered in the accident, he could not report to work on his next shift. (Anderson Testimony). Thereafter, Anderson kept Summers repeatedly informed of his medical condition. (Anderson Testimony).

On October 28, 2003[1], Mr. Anderson hand delivered to Summers a letter from Dr. P. Steven Macedo, his treating physician. (Anderson Testimony; Ex. 10). Dr. Macedo wrote that Mr. Anderson was:

---

[1] Paragraph 10 of the Second Amended Complaint addressing this point contains a typo and dates the report as 10/28/05 instead of 10/28/03. The plaintiff hereby corrects this typo.

2

>a patient that I have been treating for a closed head injury after a motor vehicle accident on 09-18-03. This letter is to inform you that due to Mr. Anderson's injuries he is unable to return to work at this time, he will be coming in to my office for treatment. We will update you regarding his work status in four weeks. We thank you for your cooperation with this patient. (Ex. 10).

Mr. Anderson's attorney, Shana Greatman, also wrote letters to the defendant updating Mr. Anderson's medical condition arising from his auto accident. (Ex. 11).

Summers remembers reviewing Dr. Macedo's letter after Mr. Anderson presented it to him. (Summers Depo. Testimony, p. 8). Summers also did not deny that Mr. Anderson kept him updated continuously regarding his medical condition while he was out. (Summers Depo. Testimony, p. 8).

The medical records from Dr. Macedo's office also clearly show that Mr. Anderson continuously treated with Dr. Macedo for his closed head injury throughout the period of time from September 18, 2003 until December 5, 2003. (Exs. 3-9; 12). They also show that Dr. Macedo restricted Mr. Anderson from working during that time. Mr. Anderson also will testify that he did not work during that time. (Exs. 4-10; 12).

On December 5, 2003, Dr. Macedo released Mr. Anderson for work and wrote a letter to the defendant confirming that fact. (Ex. 12). Mr. Anderson sent the letter to Blackhawk's corporate office. (Anderson Testimony).

On or about December 5, 2003, Mr. Anderson called Mr. Summers at Blackhawk and asked to be returned to work. (Anderson Testimony). Summers explained that the company needed him badly because they were hiring new employees to hold positions for which they did not have the requisite credentials. (Anderson Testimony). Summers informed Mr. Anderson that he needed to call Michael Berry, the vice president of the company and the owner's son, to be cleared to return to work. (Anderson Testimony).

Mr. Berry was in charge of ensuring that the defendant's employee certifications were up to date and in charge of processing these certification documents with the defendant's client, the General Services Administration (GSA). (Anderson Testimony).

Evelyn Wood, Blackhawk's Director of Human Resources, admitted seeing the medical note of December 5, 2003 and remembers telling Mr. Anderson to talk to Mr. Berry about returning to work. (Wood Depo. Testimony, p. 27). Both Ms. Wood and Mr. Summers indicated that they thought that, at the time he was ready to return, Mr. Anderson lacked some of the GSA certifications they claimed were necessary to allow Mr. Anderson's return. (Wood Depo. Testimony, pp. 25-26; Summers Depo. Testimony, p. 18). Although Mr. Anderson disputes this fact, and maintains that he had the required certifications, for the purposes of any ruling on a Rule 50 motion, the Court may accept the defendant's claims on this issue of fact.

Wood also had a conversation with Mr. Berry about reinstating Mr. Anderson. Ms. Wood admitted that Berry said he was not going to process any update of Mr. Anderson's credentials through the GSA. (Wood Depo. Testimony, p. 27).

Mr. Anderson testified that he called Mr. Berry shortly after talking to Summers, but that Berry was unavailable. (Anderson Testimony). Mr. Anderson also talked to Wood and asked her what he needed to do to return to duty. Ms. Wood said Mr. Anderson needed to talk to Mr. Berry. (Anderson Testimony). Mr. Anderson kept calling Mr. Berry and left Berry messages to call him back so that Mr. Anderson could obtain a work schedule. (Anderson Testimony).

After Berry or other Blackhawk managers failed to respond to Mr. Anderson, he attempted to get another job. (Anderson Testimony). He looked online and in the

4

newspaper for another security position and also asked friends and co-workers about positions that were open so that he could get back to work. (Anderson Testimony).

Mr. Anderson was finally able to get through to Mr. Berry around April 20, 2004. Mr. Anderson identified himself as an employee and requested a work schedule. Mr. Berry said that Blackhawk was not hiring any new employees. Mr. Anderson then explained that he was not a new employee but a current employee who had been out on disability leave since September 18th, 2003. Mr. Berry then said the company was not hiring new people, old people or anyone else because the company did not need anyone. (Anderson Testimony). The defendant never allowed Mr. Anderson to return to work after his medical leave ended on December 5, 2003. (Anderson Testimony).

**ARGUMENT**

   **I. Legal Standard Under Rule 50**

Under Rule 50(a) of the Federal Rules of Civil Procedure, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." The Supreme Court has set forth the standards governing Rule 50 motions as follows:

> . . .the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. . .
>
> In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Liberty Lobby, Inc., supra,* at 254, 106 S.Ct.

> 2505; *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, n. 6, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' *Liberty Lobby, supra,* at 255, 106 S.Ct. 2505. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & Miller 299. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' *Id.,* at 300.

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-1(2000).

Although the court is required to decide all disputed factual issues in favor of the non-moving party, it may grant a Rule 50 motion at the close of evidence, and before submission of the case to the jury, if reasonable minds could not differ as to what the facts were and under the law there can be only one reasonable conclusion as to the verdict.  Reeves, at 149-151; Gasser v. District of Columbia,  442 F.3d 758, 762 (D.C. Cir. 2006).

## II.     Legal Principles Under The Family Medical Leave Act

The standards of proof for a claim under the FMLA are straightforward.  Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period. . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D).

The statute also requires that an employee who has taken FMLA leave (A) "to be restored by the employer to the position of employment held by the employee when the leave commenced or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C.

§2614(a)(1). "The FMLA not only grants the statutory right for an eligible employee to take up to twelve weeks of leave, but also creates the concomitant right for an employee who has taken leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced.' 29 U.S.C. § 2614(a)(1)(A)." Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004). Finally the statute provides that: "It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter". 29 U.S.C. § 2615(a)(1).

     Under the interference prohibitions of the FMLA cited above, the courts hold that the defendant's intent is not an issue. An employee simply needs to establish that his employer has interfered with some right protected by the FMLA by the preponderance of evidence. Hoge v. Honda of America Mfg., Inc., 384 F.3d at 244; Bones v. Honeywell Intern, Inc., 366 F.3d 869 (10th Cir., 2004); Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (10th Cir., 2002); Rankin v Seagate Technologies, Inc., 246 F.3d 1145 (8th Cir., 2001); Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199 (11th Cir. 2001); Xin Liu v. Amway Corp., 347 F.3d 1125 (9th Cir. 2003); Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir. 1998).

     Thus, to prove an interference claim under the FMLA, an employee only needs to establish the following. First, he was an eligible employee who had worked more than 1250 hours for an employer with more than 50 employees. Second, he was absent from work because of a serious health condition as defined under the FMLA. Third, he gave the defendant notice of his need to be absent from work. Fourth, on the return to work from his absence, the defendant failed to restore him to his position of employment or an

7

equivalent position with equivalent benefits, pay and other terms and conditions of employment. Id.

The statute and Department of Labor regulations further define some of the terms essential to proving the above claims. For instance, the FMLA defines a serious health as: "an illness, injury, impairment, or physical mental condition that involves [either] inpatient care in a hospital. . .or continuing treatment by a health care provider." 29 U.S.C. § 2611(11) (2000).

The FMLA regulations further provide that a serious health condition involves a period of incapacity of at least three days along with treatment for that condition by a health care provider either (1) on two or more occasions, or (2) at least once, as long as it results in a regimen of continuing treatment under that provider's supervision. "[T]reatment . . .includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R § 825.114(a) (2005).

Moreover, the burden of proof on the employee to show he provided the employer with proper notice and request for an FMLA protected leave is not onerous. To ensure that his leave is protected under the Act, the regulations at 29 C.F.R. §825.302 require the employee to do the following:

> (a) An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on an expected birth, placement for adoption or foster care, or planned medical treatment for a serious health condition of the employee or of a family member. If 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable.

Id. (Emphasis added).

The regulation goes on to define "as soon as practicable" as follows:

> as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. For foreseeable leave where it is not possible to give as much as 30 days notice, 'as soon as practicable' ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee.
>
> Finally, the regulation indicates that:
>
> An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. *The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example. The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken.*

Id. (Emphasis added).

### III. No Reasonable Jury Will Be Able To Conclude That The Defendant Did Not Violate Mr. Anderson's FMLA Rights

Applying the above legal standards under both Rule 50 and the FMLA to the facts that will be set forth in the trial of this case, even viewed in a light most favorable to the defendant, will show that no reasonable jury could conclude that the defendant did not interfere with Mr. Anderson's rights under the FMLA. The defendant simply failed to return Mr. Anderson to his job after his absences and after he provided the defendant with notice that these absences occurred because of a serious health condition.

First, there was no dispute that the defendant was subject to the provisions of the FMLA in that it had more than 50 employees during the time period in which the cause of action arose. (Parties' Stipulation of Fact). Further, the defendant cannot not dispute Mr. Anderson's evidence that he had worked more than 1250 hours in the calendar year before he began his leave. (Anderson Testimony; Exs. 1, 2).

Second, the defendant will not be able to reasonably contest that Mr. Anderson was absent from September 18, 2003 until December 5, 2003 because of a serious health condition. During this time, it is undisputed that Mr. Anderson had suffered a closed head injury as a result of an auto accident. (Anderson Testimony; Exs. 3-10; 12). It is also undisputed that he was under treatment with a physician for several weeks as a result of that injury and that the physician incapacitated him from working. (Anderson Testimony; Exs. 3-10; 12). The defendant will not be able to reasonably contest that Mr. Anderson met his burden on the first two elements of his FMLA claim.

Similarly, whatever contest the defendant can muster on the third element also will fail. As the regulations indicate, Mr. Anderson is required only to give the defendant some notice of his absences and that the absences were for a serious health condition. He must also indicate the date he will be well enough to return to work.

The facts will not be disputed that Mr. Anderson verbally reported his injuries from the auto accident to his supervisor, Mr. Summers, the very next day and repeatedly thereafter. (Anderson Testimony; Exs. 10-12). He also provided the defendant with two written medical reports that documented the absences and the reasons therefore. (Exs. 10, 12). It was also undisputed that the defendant never requested Mr. Anderson to supply any further documentation for his absences and never refused to return him to work because he had not done so.

Under these circumstances, the fact that Mr. Anderson did not present a medical certificate in exact compliance with the defendant's rules and guidelines is irrelevant. The defendant never asked him to do so and the verbal and other documentary notice he provided for the absences complied with the FMLA requirements. See 29 C.F.R.

§825.302.

As the regulations provide and the cases clearly hold, an employee only has to provide verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave. The employee need not expressly assert rights under the FMLA, or even mention the FMLA. The employee must only state that the leave is needed for a medical reason that qualifies as a serious health condition. See, Perry v. Jaguar of Troy, 353 F.3d 510, 514 (6th Cir. 2003); Bachelder v. America West Airlines, Inc., 259 F.3d 1111, 1127 (9th Cir. 2001); Price v. City of Fort Wayne, 117 F.3d 1022, 1026 (7th Cir., 1997); Pendarvis v. Xerox Corp., 3 F.Supp.2d 53, 56 (D.D.C.,1998).

As to the fourth element, the defendant does not contest that Mr. Anderson presented to both Summers and Evelyn Wood, the Director of Human Resources, valid medical documentation and a request that the defendant return him to his position as a security guard after his physician cleared him for work on December 5, 2003. (Ex. 12). The defendant claims in the pretrial statement that it need not have complied with that request because Mr. Anderson's certifications as required by the GSA to retain his employment were not complete.

Even if the evidence shows a factual dispute on this last point, this will not affect Mr. Anderson's right to judgment as a matter of law under Rule 50. (See and compare Ex. 13 with Wood and Summers Testimony). What the defendant cannot dispute was that Michael Berry, who was in charge of the certification process in Mr. Anderson's case, utterly refused to take any steps to update any alleged deficiencies in Mr. Anderson's certification so that he could return to work. Even Evelyn Wood admitted that Mr. Berry

knew the Mr. Anderson was ready to return, but that Berry just refused to process anything to effectuate that return. (Wood Depo. Testimony, p. 27).

Under these circumstances, the defendant will have no legitimate factual grounds to contest the fact that Mr. Anderson proved the fourth element of his claim. The defendant has admitted that one of its managers was responsible for taking steps to ensure that Mr. Anderson could return to work and that this manager failed to do so. Therefore, the defendant cannot set forth a set of facts that provide a valid reason for refusing to reinstate Mr. Anderson to his position work after he was ready to return from his medical leave on December 5, 2003. (Wood Depo. Testimony, p. 27).

Because the FMLA provided Mr. Anderson with a right to return to work at that point, the defendant's actions interfered with that right. Thus, Mr. Anderson will prove the last element of his FMLA claim and he will be entitled to a directed verdict from the Court on that claim.

### IV. The Defendant Cannot Reasonably Contest That It Acted In Good Faith And Upon Reasonable Grounds

The evidence will also show that there is no legitimate factual dispute on the issue of the defendant's liability for liquidated damages. The FMLA provides that these damages are presumed if the defendant has interfered with Mr. Anderson's rights under the law. 29 U.S.C. § 2617 (a)(iii).[2] Even though it interfered with those rights, a defendant can avoid an assessment of these damages only if it proves, by a

---

[2] That statute provides:

   (a) Civil action by employees

      (1) Liability

preponderance of the evidence, that it acted in good faith and that it had reasonable grounds for the interference. Kinney v. District of Columbia, 994 F.2d 6, 12-13 (D.C. Cir.,1993); Cooper v. Fulton County, Ga., 458 F.3d 1282 (11th Cir., 2006); Hite v. Vermeer Mfg. Co., 446 F.3d 858, 868-9 (8th Cir. 2006).

The courts have also defined good faith as requiring a defendant to prove that it subjectively had an honest intention to ascertain what the FMLA required and that it intended to act in accordance with it. Id. In order for a defendant to prove that it had reasonable grounds for its actions, it must prove that it sought specific advice from a governmental authority as to what the law was and that it acted in accordance with that advice. Id.

In this case, the defendant will not be able to come close to presenting evidence from which a reasonable juror might conclude that its conduct conformed to either of the above standards. Even though there is a dispute about whether Mr. Anderson's certification was current and whether this fact precluded his immediate return, there is no dispute that the defendant did not take any action to correct this problem. As Ms. Wood will testify, Mr. Berry, the person in charge of Mr. Anderson's credentialing, simply

---

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected –

(A) for damages equal to – . . .

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; . . .

refused to process any documents that would have allowed Anderson to return. Berry gave no reason for not doing so. (Wood Testimony, p. 27).

Obviously, if the defendant had no reason for refusing to update Mr. Anderson's alleged lack of credentials, it had no reason not to return Mr. Anderson to work after his medical leave. And if it had no reason for refusing to do that, it did not come close to proving that it made an honest attempt to comply with the FMLA.

Similarly, because the defendant cannot produce evidence that it sought advice from any authority regarding its duties to Mr. Anderson under the FMLA when he attempted to return to work after his medical leave, a reasonable juror will not be able to conclude that the defendant acted upon reasonable grounds in refusing to return him. Thus, at the conclusion of the evidence in this case, the Court should also grant Mr. Anderson's motion under Rule 50 for judgment on his claim for liquidated damages under the FMLA.

### V.     The Court Should Award Mr. Anderson Damages in the Amount of $19,194.00 and The Same Additional Sum As Liquidated Damages

Mr. Anderson also expects that the defendant will not be able to present sufficient facts to challenge his claims for damages in the form of lost pay. Mr. Anderson is claiming back pay from December 5, 2003 to September 30, 2004 or a period of 42 weeks. This is the time period during which he could not find a second security guard job after Blackhawk refused to reinstate him at the conclusion of his FMLA leave. Mr. Anderson is not claiming any back pay after September 30, 2004. After that date, he

secured additional positions as a security guard and was finally able to equalize the overall pay he was earning when he previously worked for Blackhawk.

According to Mr. Anderson's 2003 W-2 from the defendant, the evidence will show that Mr. Anderson earned $16,932.00 from 1/1/03 to 9/14/03, a period of 37 weeks. (Ex. 17). At the time of his termination Mr. Anderson was earning $15.40 per hour at Blackhawk. (Ex. 17). This works out to be an average salary of $457.00 per week. (Ex. 17).

Despite diligent efforts to find another second job, it took Mr. Anderson 42 weeks to do so and to begin equalizing the earnings he would have made had the defendant reinstated him on December 5, 2003.[3] (Anderson Testimony; Ex. 19). Therefore, his back pay for 42 weeks, at $457.00 of pay per week, amounts to $19,194.00.

Because there will be insufficient proof to dispute Mr. Anderson's claim for liquidated damages, the Court should also award Mr. Anderson double this amount. Therefore, at the end of the trial, the Court should rule that Mr. Anderson is entitled to an award of damages in the form of lost pay of $38,388.00.

**CONCLUSION**

For all the foregoing reasons, at the conclusion of the evidence in this case, the Court should grant any motion Mr. Anderson intends to file for judgment as a matter of law under Rule 50 of the Federal Rules and award him the lost pay and liquidated damages he seeks.

---

[3] The defendant has not listed any exhibits or witnesses who will present testimony that there were specific available jobs that Mr. Anderson could have obtained during the period of his unemployment. Therefore, the Court must also find, as a matter of law, that the defendant failed in its burden of proving that Mr. Anderson did not properly mitigate his damages. Consequently, the defendant is not entitled to a reduction of this lost pay award. Peyton v. DiMario, 287 F.3d 1121, 1128 (D.C.Cir. 2002); Padilla v. Metro-North Commuter Railroad, 92 F.3d 117, 125-6 (2d Cir. 1996).

Respectfully Submitted,

FOR THE PLAINTIFF
LEON ANDERSON

By__/s/_ Jonathan L. Gould___
    Jonathan L. Gould
    DC Bar # 491052
    James L. Kestell
    DC Bar #955310
    Bianca Karim
    DC Bar No. 497834
    Kestell and Associates
    1012 14th Street, NW, Suite 630
    Washington, DC  20005
    Tel. 202-347-3889
    Tel. No. 202-347-0990
    Fax 202-347-4482
    email jgould@igc.org